(Attached Statement of Claims Continued from IV)

Count I

1. Plaintiff arrived at the Delaware Correctional Center on January 20, 2004 with a broken right hand. While housed at the prison receiving room, plaintiff requested to see a physician and saw a Registered Nurse ie, RN Pine concerning treatment for a broken right hand. Later that night after. I was transferred into the prison's general population.

2.) Plaintiff went to the DCC hospital and saw a Registered Nurse (RN) who declined to wrap and splint his hand. (Note: The name of this (RN) is unknown at this time by plaintiff) However said RN gave plaintiff a carton of 600 mg of ibuprofin and an ice pack. Plaintiff informed said (RN) that he believed that his hand was broken. Later that night plaintiff went back to the prison hospital and saw another (RN). Presently-unknown to plaintiff who declined to wrap or splint plaintiff's hand because in said (RN)'s (male) words, he didn't want to wrap it and get it wrong.

3.) On January 22, 2004, plaintiff saw a doctor Ali Homer who gave plaintiff a check-up and told plaintiff that it was obvious that his hand was broken. Said Dr. Ali, also told plaintiff that she would put plaintiff down for X-Ray and a cast as soon as possible. On January 22, 2004 plaintiff was transferred to MHU from C Bldg. Plaintiff confronted the building sgt. on numerous occasions and different shifts to request to see the nurse because of the unbearable pain and swelling of his hand.

4.) Plaintiff was told by the MHU sgt. to put in a sick-call slip. Finally on February 26, 2004 plaintiff was seen by a nurse Queenie, who gave plaintiff a three day supply of motrin. Plaintiff was accompanied to medical by correctional officer Paul Unsworth the MHU Building 23 B. Tier officer who work the 4-12 shift.

5.) On several other occassion, plaintiff was told by several other MHU correctional officers i.e. Sgt Ski on the 4-12 shift at MHU and correctional officers Tabernackle and McClain to put in for sick-call. C.O. Abernackle and McClain works 8-4 shift.

6.) On January 28, 2004, plaintiff put in a sick-call for treatment of his hand to no avail. Then on February 1, 2004 plaintiff filed a grievance about not being seen by the x-ray technician and obstitition as prescribed by doctor Ali Homer on January 22, 2004. Plaintiff put in another sickcall on Feb 10, 2004 and filed another grievance and was seen on February 14, 2004 by the Head (RN) Brenda Holwerda who examined plaintiff's hand and stated she was sorry that she didn't know who it was who told me (plaintiff) that I would be taken care of by February 18, 2004 the following Wednesday. Plaintiff was given 800 mg of motrin and saw the x-ray technician who confirmed that plaintiff had a broken hand that was starting to mend on it's own.

7.) On Thursday, February 20, 2004 plaintiff again saw RN Brenda Holwerda who stated that she wanted him to relinquish his grievances (chief medical officer for (FCMS) medical services contractual staff Brenda Holwerda and plaintiff signed a document stating that plaintiff will go outside the prison to get my hand fixed i.e. proper medical treatment.

8.) As a precaution plaintiff requested a copy of said Doctrine Agreeing to send him (plaintiff) to a outside physician A.N. Brenda Holwardo stated she would send a copy of said Doctrin via the mail. To date, plaintiff has not recived said Doctrin or nor has he been sent to an outside Doctor in regard to his severe broken hand for medical treatment. Plaintiff hand remains broken and untreated as of the date of this lawsuit. Defendant Holwardo has acted with a requisite or culpable state of mind. Defendant knew and disregarded an excessive risk to plaintiff's Health or safety. Defendants knew and were aware of plaintiffs broken right hand, yet ignored administering the Adequate and proper treatment. The medication 800 mg of motrine provided to the plaintiff was nothing more than a cursory method of treatment because of the delay in treatment. Plaintiff's hand was never set in a cast resulting in a permanent bump. Defendant's has acted with reckless disregard for plaintiff condition. And has prevented plaintiff from receiving needed and recommended medical treatment and has delayed necessary medical treatment based on a nonmedical reason. And persist in a particular course of treatment in the face of resultant pain and Risk of permanent injury.

Attached Sheet
Statement of claim Count II

1) Plaintiff arrived at the Delaware correctional center on January 30, 2004 with a broken right hand while housed at the prison receiving room, plaintiff requested to see a physician and saw a Registered Nurse, i.e., RN pine concerning treatment for a broken right hand. Later that night after I was transferred in to the general prison's population.

2) Plaintiff went to the DCC hospital and saw a Registered Nurse (RN) who declined to wrap and splint his hand. Note: The name of this (RN) is unknown at this time by plaintiff However said RN gave plaintiff a carton of 600 mg of ibuprofin and a Ice Pack. Plaintiff informed said (RN) that he belived that his hand was broken, later that night plaintiff went back to the prison hospital and saw another (RN) presently unknown to plaintiff who declined to wrap or splint plaintiff's hand because in said (RN) (males) word's he didn't want to wrap it and get it wrong

3.) On January 22, 2004, plaintiff saw a doctor Ali Hiwer who gave plaintiff a check-up and told plaintiff that it was obvious that his hand was broken. Said Dr. Ali also told plaintiff that she would put plaintiff down for X-ray and a cast as soon as possible. On Jan 22, 2004 plaintiff was transferred to MHU from C. Bldg. Plaintiff confronted the Building Sgt on numerous occasions and different shifts to request to see the nurse because of the unbearable pain and swelling of his hand.

4.) Plaintiff was told by the MHU Sgt. (name unknown) to put in a sick call slip. Finally on February 26, 2004 plaintiff was seen by a nurse Quamir, who gave plaintiff a three (3) day supply of motrin. Plaintiff was accompanied to the medical by correctional officer Paul Unsworth. The MHU building 23 B-Tier officer who works on the 4-12 shift.

5.) On several other occassions, plaintiff was told by several other MHU correctional officer ie. Sgt Ski on the 4-12 shift at MHU and correctional officer Abernackle and McClain to put in for sick-call. C/O Abernackle and McClain work 8-4 shift.

6) On January 28, 2004 plaintiff put in a sick-call for treatment of his hand to no avail, then on February 1, 2004, plaintiff filed a administrative medical grievance about not being seen by the x-ray technician and obstitician as prescribed by the doctor W. Homer on January 23, 2004. Plaintiff put in another sick-call on February 10, 2004 and filed another grievance and was seen on February 14, 2004 by (Head RN chief medical officer Brenda Holwerda who examined plaintiff's hand and stated she was sorry that she didn't know who it was who told me (plaintiff) that I would be taken care of by February 18, 2004 the following wednesday. Plaintiff was given 800 mg of motrin for the first time and plaintiff was in some really acute severe pain and saw the x-ray technician who confirmed that plaintiff had a broken hand that was starting to mend on it's own

7.) On thursday, February 20, 2004, plaintiff again saw chief medical officer Brenda Holwerda who stated that she wanted plaintiff to exhaust all administrative remedy as are available by signing a piece of paper "Doctrine" at medical services contractual staff interview. Plaintiff agreed and signed the Doctrine. The plaintiff was told by chief medical officer Brenda Holwerda that he would go outside the prison to get my hand fixed w/ proper medical treatment which never took place.

8.) Plaintiff agreed as a premature resolution to his Feb 1, 2004 and his Feb 10, 2004 grievances Id informal resolution and defendants agreed to treat plaintiff with proper medical care but never did. Plaintiff was under the impression that he would receive the appropriate medical attention as a resolution to his two grievances. Plaintiff never received elective surgery, hand cast ect.

(Attached Sheet)

Statement of Claim Count II

9) The Defendant First Correctional (FCM) was Deliberately indifferent to Plaintiff's serious medical needs. On 1-22-04 plaintiff was diagnosed by first correctional medical physician Doctor Al-Homer. As having a broken right hand. Said Doctor Homer ordered X-ray and a hand cast on 1-22-04. Plaintiff filed several sick-call slips about the Delay stating need medical attention still haven't recived it. Plaintiff filed a medical Administrative Grievance about the substandard medical treatment, plaintiff continued to file Grievances and sick-call slips on 2-1-04 and a second on 2-10-04 plaintiff was confronted on Feb 14, 2004 by Defendant Holwerda. Chief medical officer from the medical Services contractual staff. Directly Responsible to the institution. in Ref: To sick-call/Grievance plaintiff was given motion for pain by Holwerda. but she did not wrap or X-Ray plaintiffs hand on feb 18 plaintiff recived his X-Ray. The technician confirmed that plaintiff had a broken hand. The Technician also determined that plaintiff hand was begining to mend itself. On feb 20 2004 plaintiff was seen by Holwerda in Ref: Medical services contractual staff interview. Holwerda Told plaintiff that he would be examined by a outside physician. On 3-2-04 plaintiff was transferred to a Dr. Dushuttle. This verifying medical evidence by the Doctor who examined plaintiffs hand own admission. stating that plaintiff hand had already started healing on it's own. due to the non-treatment by defendants clearly Demonstrates Defendants Delay inelective surgery plaintiff offers this expert medical testimony identifying the alleged deviation from the applicable standard of care. See consultation order prepared by Dr. Dushuttle said doctor Dushuttle recommended Re-checking in 6 weeks. The Defendant (FCM) failed to carry out the Prescribed orders of it's own doctor and failed to carry out the Recommended order of Dr. Dushuttle on 3-2-04. The Substandard medical treatment provided to plaintiff was Arbitrary capricious and cruel. The medications provided to the plaintiff. (800 mg of motrin) was nothing more than a cursory method of treatment and has prevented plaintiff from Receiving needed and recommended treatment and persists in a particular course of Treatment in the face of Resultant pain and risk of permanent injury

And has delayed necessary medical treatment based on a non-medical

10.) Reason The Defendant CFCMS has acted with a culpable state of mind Defendant knew and disregarded an excessive risk to plaintiff health or safety Defendants knew of and were aware of plaintiff's broken right hand, yet ignored Administering the Adequate and proper treatment, prescribed by it's own doctor and that of Anothers preventing plaintiff from receiving needed and Recommended medical treatment Because of the delay in treatment, plaintiff's hand was never set in a cast, Resulting in a permanent bump. The Defendant has acted with reckless disregard for for plaintiff's condition." Moreover, plaintiff filed Numerous grievances Trying to obtain treatment for his severly broken right hand Defendant has acted upon grievance #1309 and abandoned plaintiff feb 10, 2004 Grievance plaintiff incorporates by Reference the B.O.P. Bureau of prison 4.4 "Grievance procedure" which prohibits Repeatative Grievances for the same offence Moreover, The Delaware Department of corrections Administrative procedures provides that Medical Grievances be submitted to the [Inmate Grievance Chair], who will Forward the grievance to the medical Service contractual staff for Review. The medical services contractual staff will attempt "informal Resolution" of the matter, if such resolution fails, a medical Grievance committee ("MGC") hearing will be conducted, which hearing will be attended by the Grievant and The [Inmate Grievance Chair"]. If the matter is Resolved at that Stage, The Case is closed; otherwise the Grievant is directed to complete the (MGC) Appeal Statement Section of the written grievance and forward it to the [Inmate Grievance chair"] The plaintiff and Head F.N Brenda Holwerda sighnid and Agreed to Resolve this matter on 2-20-04 [the "informal Resolution"] Thus on it's face The DOP 4.4 "Grievance manual" provides 180 days to complete grievance process. It is beyond the 180 days and the grievance process concluded unresolved. Further efforts to Resolve this institutionally is futile. Moreover, The Defendant (FCM) directly participated in the infraction, After learning of the violation through a Report and failed to remedy the wrong Agala, wilson Regional H.R. Mgr was Served on 9/15/04 By USMservice with Regards to C.A. # 04-176. GMS