Statement of Claim
Continued from IV Count III

1. Plaintiff arrived at the Delaware Correctional Center on January 20, 2004 with a broken right hand while housed at the prison receiving room, Plaintiff requested to see a physician and saw a Registered Nurse Ie., RN Pine concerning treatment for a broken right hand later that night after I was transferred into general prison population.

2) Plaintiff went to the DCC hospital and saw a Registered Nurse (RN) who declined to wrap and splint his hand (note: the name of this RN is unknown at this time by plaintiff). However said RN gave plaintiff a carton of 600 mg of ibuprofin and a ice pack. Plaintiff informed said (RN) that he believed that his hand was broken. Later that night Plaintiff went back to the prison hospital and saw another (RN) unknown to plaintiff who declined to wrap or splint plaintiff hand. Presently in said (RN)'s (males) words he didn't want to wrap it and get it wrong.

3) On January 22, 2004, Plaintiff saw a doctor Ali Homer who gave plaintiff a check up and told plaintiff that it was obvious that his hand was broken. Said Dr. Ali also told plaintiff that she would put Plaintiff down for X-ray and a cast as soon as possible. On January 22, 2004 plaintiff was transferred to MHU from C-Bldg. Plaintiff confronted the Bldg Sgt. on numerous occasions and different shifts to request to see the nurse because of the undenable pain and swelling of his hand.

4.) Plaintiff was told by the MHU Sgt. (Name unknown) to put in a Sick call slip. Finally on February 26, 2004 plaintiff was seen by a Nurse Quannie, who gave plaintiff a three (3) day supply of motrin. Plaintiff was accompanied to medical by correctional officer. Paul Unsworth, The MHU Building 23. B-Tier officer who work on the 4-12 shift.

5.) On several other occassions, plaintiff was told by several other MHU correctional officer ie; Sgt Ski on the 4-12 shift at MHU and correctional officers Abernakkle and McClain to put in for sick call, CO Abernakkle and McClain works 8-4 shift.

6.) On January 28, 2004, plaintiff put in a sick-call for treatment of his hand to no avail. Then on February 1, 2004, plaintiff filed a Grievence about not being seen by the X-ray Technician and obstitician as prescribed by doctor. At Howard on January 22, 2004, plaintiff put in another sickcall on Feb 10, 2004 and filed another Grievence and was seen on February 14, 2004 by The Head (RN) Brenda Holwerda who examined plaintiff's hand and stated she was sorry that she didn't know who it was who told me (plaintiff) that I would be taken care of by February 18, 2004 the following wednesday, plaintiff was given 800 mg of motrin and saw the X-ray Technician who confirmed that plaintiff had a broken hand that was starting to mend on it's own.

7.) On Thursday, February 20, 2004, plaintiff again saw RN Brenda Holwerda who stated that she wanted him to relinquish his grievence chief medical officer, For (FCM) medical services contractual staff Brenda Holwerd and plaintiff sighned a Doctrin stating that plaintiff will go outside the prison to get my hand fixed, ie: proper medical treatment.

8) It's a precaution plaintiff Requested a copy of said Doctrin agreeing to send him (plaintiff) to a outside physician R.N Blinda Holwada stated she would send a copy of said Doctrine vice the mail. To date plaintiff neverdid Receive Elective surgery cost ect. nor has he been transferred back to said doctor as her recommended Rechecking in 6. weeks. Defendant Lisa, Merson failure to follow the D.o.c. Grievance procedure the 4.4 standard operating procedure for Grievances provides (3) days to conclude a Level I informal grievance, the grievance was filed on 2/1/04 but the Level I grievance was not done until 2/20/04 this is 19 days or Rather 16 days to Late beyond the scope of the grievance process. A direct result of this delay is that I saw the outside doctor too late (See Consultation order prepared by Dr. Dushuttle on 3-2-04 this delay directly resulted in permanent injury to my hand Defendant Lisa, Merson has acted with a Requisite or culpable state of mind Defendant Merson, Lisa knew and disregarded an excessive Risk to plaintiff's Health or Safety Defendant Merson, Lisa knew and was aware of plaintiff's Broken Right Hand, yet ignored administering the adequate and proper treatment because of the delay in treatment, plaintiff hand was never set in a cast Resulting in a permanent bump. Defendant's has acted with reckless disregard for plaintiff's condition and knew of the plaintiff need for medical treatment and intentionally Refuse to provid it. And delay necessary medical treatment based on a non-medical Reason. And prevents plaintiff from receiving needed and recommended medical treatment

Attached Statement of Claim continued

From IV. Count IV

1.) Plaintiff Arrived At the Delaware Correctional Center on January 20, 2004 with a broken Hand. While housed At the prison receiving Room, plaintiff requested to see a physician and saw a Registered Nurse. Ie; R.N. pine concerning treatment for a broken Right Hand. Later that night after I was transferred into the general prison population.

2.) Plaintiff went to the DCC hospital and saw a Registered Nurse (RN) who declined to wrap and splint his hand. Note: the name of this (RN) is unknown at this time by plaintiff. However Said RN gave plaintiff a carton of 600 mg of ibuprofin and a Ice pack. Plaintiff informed said (RN) that he belived that his hand was broken. Later that night plaintiff went back to the prison Hospital and saw Another (R.N.) presently unknown to plaintiff who declined to wrap and splint plaintiffs hand because in said (R.N.) (male) word he didnt want to wrap it and get it wrong.

3.) On January 22, 2004, plaintiff saw a doctor Ali Homer who gave plaintiff a check-up and told plaintiff that it was obvious that his hand was broken. Said Dr. Ali also told plaintiff that she would put plaintiff down for x-ray and a cast as soon as possible. On Jan 22, 2004 plaintiff was transferred to MHU from C-Bldg. Plaintiff confronted the Building Sgt on numerous occassions and different shifts to request to see the nurse because of the unbearable pain and swelling of his hand.

4.) Plaintiff was told by the MHU Sgt (name unknown) to put in a sick call slip. Finally on Feb 26, 2004 plaintiff was seen by a nurse Quamie, who gave plaintiff a three day supply of motrin. Plaintiff was accompanied to medical by correctional officer paul unsworth the MHU Building 23 B-tier officer who works on the 4-12 shift.

5.) On several other occassions, plaintiff was told by several other MHU correctional officers i.e. Sgt. Ski on the 4-12 shift at MHU and correctional officer pbennackle and mcclain to put in for sick call. CO Abernackle and McClaine work 8-4-shift

6.) On January 28, 2004 plaintiff put in a sick-call for treatment of his hand to no avail; then on Feb 1, 2004. plaintiff filed a administrative medical grievance about not being seen by the x-ray technician and obstitician as prescribed by the doctor Alitbner on January 27, 2004, plaintiff put in another sick-call on February 10, 2004 and filed another grievance and was seen on February 14, 2004 by Head RN Brenda Holwerda, chief medical officer examined plaintiff's hand and stated she was sorry that she didn't know who it was who told me (plaintiff) that I would be taken care of. On February 18, 2004 the following wednesday. plaintiff was given 800 mg of motrin for the first time and plaintiff was in some really acute severe pain and saw the x-ray technician who confirmed that plaintiff's hand was broken and was starting to mend on it own.

7.) On Thursday, February 20, 2004. plaintiff again saw chief medical officer Brenda Holwerda who stated that she wanted plaintiff to exhaust all administrative remedy's as are available by signing a piece of paper "Doctrine" at medical services contractual staff interview. plaintiff agreed and signed the Doctrine the plaintiff was told by chief medical officer Brenda Holwerda that he would go outside the prison to get my hand fixed ie; proper medical attention which never took place.

8.) Plaintiff Agreed as a premature Resolution to his Feb 1, 2004 and his Feb 10, 2004 Grievances (Id.) informal Resolution and Defendants Agreed to treat plaintiff with proper medical care but never did. Plaintiff was under the impression that he would recive the appropriate medical attention as a resolution to his two grievances. Plaintiff never recived elective surgery, Hand cast Ect. on 3-2-04 I was transferred to a outside doctor and He Recommended re checking in 6 weeks The Plaintiff was never taken back to said Dr. Dushuttle plaintiff filed another grievance on 2-27-05 with regards to my elective surgery because plaintiff still experiencing pain in the Region wich was disregarded (Id) Grievance Dated 2-27-05, The Defendant, Angela Wilson was deliberately indifferent to plaintiff's serious medical needs on 9-15-04 Defendant Angela Wilson was served with process Return of service executed by USM Services on 9-08-04. Plaintiff was diagnosed by First correctional medical physician Doctor Ali Homer. After stating a broken Right hand said Doctor Homer ordered x-Ray and a Hand cast on 1-22-04 Plaintiff filed several sick call slips about the delay stating need medical attention still havent recived it. Plaintiff filed a medical Administrative grievance about the substandard medical treatment. Plaintiff continued to file grievances and sickcall slips on 2-1-04 and a second on 2-10-04 plaintiff was confronted on February 11, 2004. By Defendant chief medical officer Brenda Holwerda from the medical services contractual staff. Directly Responsible to the institution in reff. To Sick-call/Grievances

9). Plaintiff was given motrin for pain by Holwerda, but she did not wrap or x-ray plaintiff's hand. on February 18 plaintiff recieved his x-ray. The technician confirmed that plaintiff had a broken hand. The Technician also determined that plaintiff hand was begining to mend itself. on Feb 20 2004 plaintiff was seen by Holwerda in Ref: Medical Services contractual staff interview; Holwerda told Plaintiff that he would be examined by a outside physician. on 3-3-04 Plaintiff was transferred to a doctor. Doshottle. This verifying medical evidence by The Doctor who examined plaintiff's hand own admission, stating that Plaintiff hand had already started healing on its own. Due to the none-treatment by Defendants clearly demonstrates Defendants delay in elective Surgery Plaintiff offers the expert medical testimony identifying the alleged deviation from the applicable standard of care (see consultation order prepared by Dr. Doshottle said Doctor Doshottle Recommended Re-checking in 6 weeks. The Defendant's Failed to carry out The prescribed orders of its own doctor (Id. physician's order sheet, stat new orders below, where Clearly Defendant chief medical officer Brenda Holwerda own admission, stating; Repeat Above order not Done Demonstrate Defendant reckless disregard for Plaintiff condition. plaintiff filed several sick-call slip about the unbearable pain and swelling of his hand and filed grievences to this fact, stating need medicine other still Haven't recieved it. To no avail. The plaintiff Request were unanswered until Feb 14 The Plaintiff was given 800 mg of motrine for the First time and plaintiff was in some Really Acute Severe pain

Defendant Angelia Wilson directly participated in the infraction on 9/15/04

10.) Despite the fact that Defendant Angelia Wilson was served process with regards to C.A. #04-176-GMS the Defendant has failed to remedy the wrong. Plaintiff filed a Administrative Medical Grievance on 2.27.05 which was disregarded (Id. Grievance, 2.27.05). The substandard medical treatment provided to plaintiff was Arbitrary Capricious and Cruel. the medication provided to the plaintiff. 800 mg of motrin was nothing more than a cursory method of treatment and has prevented plaintiff from receiving needed and recommended medical treatment and persist in a particular course of treatment in the face of resultant pain and risk of further significant injury and has delayed necessary medical treatment based on a non-medical reason. The Defendant Angelia Wilson, has acted with a culpable state of mind. Defendant knew and disregarded an excessive risk to plaintiff's health or safety. Defendant knew of and were aware of plaintiff's broken hand yet ignored administering the adequate and proper treatment. The Defendant knows of the plaintiff need for medical treatment but intentionally refuse to provide it. Plaintiff has a serious medical and he has demonstrated that the medical deprivation was objectively serious and that Defendants First Correctional Medical, Brenda Holwerda, Lisa Meson, Angelia Wilson, subjectively know about the deprivation and refuse to remedy it. Defendants conduct demonstrates a knowing indifference to plaintiff's serious medical needs. Defendants extreme conduct has caused severe emotional distress to plaintiff. Defendants failure to adequately treat plaintiff's condition has resulted in further significant injury and chronic and persistant pain for him and affected his daily activities and persist with reckless disregard for plaintiff's condition. Because of the Delay in treatment. Plaintiff's hand was never set in a cast. Resulting in a permanent bump.

11.) Defendant. Wilson, Angelia, Regional H.R. Manager of First Correctional has been aware of this problem since 9/17/04 as verified by Docket # 8 of Civil Action # 04-CV-176.) Since 9/17/04 Ms Wilson has not exercized her Supervisory Authority to alliviate This on going problem. Her inaction since 9/17/04 is deliberate indifference

Plaintiff Asserts: I am trained as a master carpenter. I will not be able to work as a master carpenter with my hand in this condition. The failure of the Defendants to act on the broken Hand has caused Serious and permanent injury to my Hand. This injury, if not corrected will effect my future earnings potential for the rest of my life. A master carpenter can earn $40,000 a year. without the full use of my Hand. Plaintiff will only be qualified for minimum wage Jobs with an earning potential of About 15,000, A year The defendants deliberate indifference could cause me Actual damages of $25,000 a year

(Attached sheet statement of claim continued from)
(; IV (cont II), count VI

1.) Plaintiff arrived at the Delaware Correctional Center on January 26, 2004 with a broken right hand while housed at the prison receiving room. Plaintiff requested to see a physician and saw a Registered Nurse ie, R.N. Pini concerning treatment for a broken hand, Right. Later that night after I was transferred into the prisons general population.

2.) Plaintiff went to the DCC Hospital and saw a R.N. who declined to wrap and splint his hand (Note: the name of this RN is unknown at this time by plaintiff) However said RN. gave plaintiff a carton of 600 mg of ibuprofin and a Ice pack. Plaintiff informed said (RN) that he believed that his hand was broken. Later that night plaintiff went back to the prison hospital and saw another (RN) presently unknown to plaintiff who also declined to wrap or splint plaintiff's hand because in said RN's words he didn't want to wrap it and get it wrong.

3.) On January 22, 2004, plaintiff saw a doctor Ali Honar who gave plaintiff a check up and told plaintiff that it was obvious that his hand was broken. Said Dr. Ali also told plaintiff that she would put plaintiff down for x-ray and a cast as soon as possible. On January 22, 2004 plaintiff was transferred to MHU from C-Bldg. Plaintiff confronted the Building Sgt on numerous occassions and different shifts to request to see the nurse because of the unbearable pain and swelling of his hand.

4.) Plaintiff was told by the MHU Sgts to put in a sick-call slip. Finally on february 26, 2004 plaintiff was seen by a nurse avonie, who gave plaintiff a three day supply of motrin. Plaintiff was accompanied to medical by correctional officer paul unsworth the MHU Building 03 B Tier officer who work the 4-12 shift

5.) on several other occassions on different shifts, plaintiff was told by several other MHU correctional officers i.e., Ski on the 4-12 shift at MHU and correctional officer Sgt Abernackle and correctional officer McClain to put in for a sick-call. (o Abernackle and McClain work 8-4 shift

6.) on January 28, plaintiff put in a sick-call for treatment of his hand to no-avail. Then on february 1, 2004 plaintiff filed a Administrative medical grievance about not being seen by the x-ray technician and obstitution as prescribed by doctor Ali Homer on January 22, 2004. Plaintiff put in another sick-call on feb 10, 2004 and filed another grievance and was seen on february 14, 2004 by the Head (RN) Brenda Holweida who examined plaintiff hand stated she was sorry that she didn't know who it was who told me (plaintiff) that I would be taken care of on february 18, 2004 the following wednesday. Plaintiff was given 800 mg of motrin and saw the x-ray technician who confirmed that plaintiffs hand had a broken bone that was starting to mend on it's own

7.) On Thursday, February 20, 2004 plaintiff Again s/w RN Brenda Holward, who stated that she wanted him to Relinquish his grievance o/t FCM medical services contractual staff interview Brenda Holward and plaintiff agreed to exhaust all Administrative Remedy as are Available plaintiff signed a Doctrine stating that plaintiff will go outside the Prison to get my hand fixed ie, proper medical treatment. Id informal Resolution.

8.) As a precaution plaintiff Requested a copy of said Doctrine agreeing to sent him (plaintiff) to a outside physician R.N Brenda Holward, stated she would sent a copy of said Doctrine via the mail. To date, plaintiff has not Recived said Doctrine or nor has he been sent to an outside Doctor in Regard to his severe broken Hand for medical treatment. Plaintiff's hand Remains broken and untreated as of the date of this lawsuite. Plaintiff never did Recive elective surgery hand cast ect.